IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DISTRICT OF COLUMBIA

| | |
|---|---|
| INSTITUTE FOR JUSTICE, ) | |
| ) | Case No. 1:16-cv-02406-EGS |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| INTERNAL REVENUE SERVICE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## **DECLARATION OF DEAN E. MARTIN**

I, Dean E. Martin, pursuant to the provisions of 28 U.S.C. §1746, declare and say:

1. I am a Senior Analyst in Criminal Investigation (CI), Operations Policy & Support, Warrants and Forfeiture section of the Internal Revenue Service. I have been employed with the Internal Revenue Service (Service) since July 2000, and assumed my present position in July 2016.

2. I am familiar with plaintiff's Freedom of Information Act (FOIA) request, which is the subject of the above-captioned case, and the Service's Asset Forfeiture Tracking and Retrieval (AFTRAK) system, which forms the basis for the request.

3. In my role as a Senior Analyst I am responsible for actively participating in the formulation and development of CI programs and policies affecting national and field office operations. My primary role is to plan and coordinate criminal investigative activities with the highest degree of complexity and sensitivity, frequently involving nationwide programs and issues. My duties deal exclusively with nationwide criminal investigative and enforcement activities of the Service relating to warrants and forfeitures. In the performance of those duties, I use the AFTRAK system on an almost daily basis to review seizure and forfeiture information

and to generate reports.

4. AFTRAK is a management tool used internally by authorized local and national office CI employees to ensure the accurate and timely tracking and management of CI investigations that entail seizures and the assets that are seized.

5. Investigations are CI's primary unit of work.  Each investigation may result in one or more seizures, and each seizure may result in one or more assets being seized for evidence or forfeiture.  CI's investigative jurisdiction includes tax and related financial crimes (title 26), money laundering and related offenses (title 18), and Bank Secrecy Act violations (title 31).  CI investigations may be conducted using administrative (internal to CI) and/or grand jury (in conjunction with the United States' Attorneys' Office (USAO)) processes.

6. AFTRAK is a web-based application system specifically designed to track assets seized for forfeiture, evidence, and abandonment.

7. AFTRAK was developed for the purpose of capturing and monitoring all assets seized by CI from the date of seizure through the date of forfeiture or disposition.   AFTRAK is also used for monitoring assets in inventory and for law enforcement statistical and reporting purposes exclusively by CI personnel.

8. AFTRAK is written in the C+ programming language and compiles information from multiple databases that have been developed for the exclusive use of authorized CI employees to enable CI to support and track information concerning their day to day asset forfeiture operations.

9. In CI's national office, the primary users of AFTRAK are the employees in the warrants and forfeiture section, and in the field, the primary users of AFTRAK are the special agents designated as the asset forfeiture coordinators as well as the asset forfeiture specialists for

their field office.

10. On March 28, 2017, after reviewing AFTRAK and plaintiff's FOIA request, the Service determined that it would release a copy of the most utilized and complete standard report available from the AFTRAK system, the Open and Closed Asset Report (the report), which contains comprehensive data about every asset seized by CI within a specified time period.[1] I was assigned to review and properly redact this report for release to the plaintiff.

11. The Open and Closed Asset Report was selected from the menu of standard AFTRAK reports because we determined that release of any of the other standard reports available from AFTRAK, alone or in combination, would not result in the production of any additional or different information about any of the assets seized by the Service during the time period plaintiff requested than the Open and Closed Asset Report contains.

12. On March 30, 2017, I accessed the AFTRAK system and ran the report for all seizures undertaken by CI between January 1, 2000 (which is the start date requested by the plaintiff in its FOIA request) through March 3, 2015 (which is the date of the plaintiff's FOIA request), and saved it in Adobe (PDF format) to begin review and redaction of the report for eventual release to the plaintiff. This is the Service's established process for responding to most FOIA requests, as Adobe includes redaction tools that enable the full and complete redaction of information, the disclosure of which is prohibited, from documents responsive to those requests.

13. Just after I began detailed work on review and redaction of the report in Adobe (PDF format), on April 11, 2017, DOJ apprised that plaintiff requested and would like to receive the

---

[1] In its' FOIA request, plaintiff requested "all records contained" in the AFTRAK database in an electronic format "such as a database 'dump' or comma-separated value files [sic]." A database dump is an information systems utility for backing up a database's structure and contents so that it can be restored in the event of a systems failure and/or data loss. The Open and Closed Asset Report includes information accessible in the AFTRAK system and is the standard business record of the Service.

redacted report in CSV (comma-separated values), Excel, Stata, or SPSS format instead of in Adobe (PDF format).  In computing, a CSV file stores tabular data in plain text.  Each line in the CSV file is a data record, and each record consists of one or more fields, separated by commas.

14.  In an effort to accommodate the plaintiff, I stopped work on the report in Adobe, and myself and others at the Service spent considerable time and effort attempting to determine whether it would be possible to produce a properly redacted report timely in one of the formats the plaintiff requested.

15.  Based on the software tools owned and regularly used in the course of our day to day operations, of the four formats requested by the plaintiff, the only format that we had software that we could possibly use to produce the report was Excel.  However, despite our best efforts, we concluded that due to the limitations inherent in Excel, it would not be possible to permanently redact the information on the report that was exempt from disclosure under the FOIA and readily reproduce the redacted report in Excel format.

16.  It was further determined that in order to produce the report with redactions in any of the other formats requested by the plaintiff would require either acquisition of software not currently owned by the Service or development of a new computing program.  Either of these options would entail significant costs, take a substantial period of time (likely to exceed one year), and require the diversion of limited, highly specialized staff resources, none of which is feasible given the budgetary and resource constraints currently facing CI and the Service.

17.  Accordingly, we concluded that the report could not be made "readily reproducible", with all information protected from disclosure properly redacted, in any of the formats requested by the plaintiff with reasonable efforts.

18.  I therefore resumed work on the report in Adobe on a full-time basis on April 17,

2017, and all of my other assignments were placed "on hold" pending the completion of this project.

19. The report for the 15 year time span covered by plaintiff's FOIA request included information about more than 30,500 assets seized during the course of almost 5,000 separate investigations taking place in practically every jurisdiction in the United States.

20. I completed redaction of the report on May 26, 2017, and forwarded the results to management for further review. On June 6, 2017, CI management authorized release of the redacted report to DOJ for eventual release to the plaintiff.

## Introduction to Exemptions

21. I am familiar with the segregation requirement of subsection (b) of the FOIA for any non-exempt information contained in responsive records. I have carefully read and analyzed the report at issue and have attempted to make every reasonably segregable non-exempt portion of that report available to the plaintiff. As a result, I conclude the Service has redacted only those fields on the Open and Closed Asset Report that fall within a valid FOIA Exemption, or those fields wherein the portions exempt from disclosure under the FOIA are so inextricably intertwined with nonexempt material as to be non-segregable.

## Redactions to the Open and Closed Asset Report

### Exemption 3(A) in Conjunction with Fed. R. Crim. Proc. 6(e)

22. All fields on the report for an asset associated with a grand jury investigation as of March 28, 2017, are redacted in their entirety pursuant to FOIA Exemption 3(A) in conjunction with Fed. R. Crim. Proc. 6(e). Rule 6(e) covers all matters that could tend to reveal what occurred or was occurring in the grand jury investigation and its scope is necessarily broad.

23. CI Special Agents are authorized to assist the attorney for the government in conducting investigations, preparing for indictment and trial, and obtaining evidence relative to

sentencing in matters involving potential violations of Title 26, Title 18, and/or Title 31 of the United States Code committed in contravention of tax, bank secrecy, or money laundering statutes. An attorney for the government may request that a CI Special Agent assist in such investigations by a Federal grand jury, or make a presentation to a Federal grand jury. Also, the Service or an attorney for the government may initiate a request for a grand jury investigation.

24. On its information systems, the Service currently identifies grand jury information at the investigation level; all information concerning all seizures and assets seized related to an investigation identified as grand jury is also considered grand jury material. The identification of grand jury material on the Service's information systems is entered by the CI Special Agent working an investigation and managed by field office senior management. CI Special Agents assigned to such investigations work at the direction of the Assistant United States Attorney (AUSA) that opens and leads a grand jury investigation.

25. All of the documents that the Service obtains or generates during a grand jury investigation are grand jury material subject to the confidentiality provisions of Rule 6(e) and is under the custody and control of the AUSA leading the grand jury, not the Service. The Service does not have authority to determine whether information related to an investigation is "grand jury information" prohibited from disclosure under Fed. R. Crim. Proc. 6(e). Rather, authority for the classification of material derived from a grand jury investigation is vested exclusively in each of the individual 93 USAOs.

26. Once the grand jury indicator is entered for an investigation, all systems stored information associated with that investigation is designated grand jury material. This is to ensure that the secrecy provisions of Rule 6(e) are not compromised. Further detailed information about grand jury investigations is available in IRM Part 9.5.2 (Sept. 22, 2015).

27. In order to identify the assets on the report that are associated with a grand jury investigation and protected from disclosure, I contacted our Planning, Research and Analysis (PRA) section and requested that they run a query that would identify all assets on the report that are associated with grand jury proceedings and subject to the confidentiality requirements of Fed. R. Crim. Proc. 6(e). I do not have authorization to execute the query that generates the list of assets that are subject to Rule 6(e); the use of that system function is highly restricted to ensure that the secrecy designations made by the individual USAOs who have the sole authority to make such designations are not compromised.

28. Once I had the query results, I redacted as grand jury material all information on the report for each asset associated with a grand jury investigation.

29. This is the only administratively feasible and practicable method the Service has for identifying and redacting grand jury information from information system generated summary reports, such as the Open and Closed Asset Report, requested in plaintiff's FOIA request. In responding to FOIA requests, it is neither feasible nor practicable for the Service to provide a copy of the report to the Special Agent and AUSA for each of the nearly 5,000 investigations represented on that report ask them to review their physical files in order to specifically identify which, if any, columns of information for every asset associated with the grand jury investigation they worked were not grand jury material and therefore able to be disclosed.

### **Exemption 7(A)**

30. Exemption 7(A) provides an exemption for disclosure for information compiled for law enforcement purposes to the extent that production "could reasonably be expected to interfere with on-going enforcement proceedings."

31. The entries on the Open and Closed Asset Report redacted pursuant to this

exemption pertain to seized asset(s) associated with all open criminal investigations. "Open" in this context is defined as being associated with an ongoing criminal investigation, and/or an open seizure investigation. Exemption 7(A) is only specifically identified on the report for those assets that are associated with an open investigation that has not been before a grand jury, but it is applicable for every asset on the report associated with an open investigation and is in addition to whatever other exemptions might also apply.

32.   Disclosure of any information concerning an open criminal investigation could reasonably be expected to compromise or interfere with ongoing law enforcement efforts in a wide variety of ways.

33.   For example, disclosure of information identifying the asset (such as the Asset Description), the Investigation Name (which is name of the individual target), dates of seizure, and processes used for forfeiture, would allow plaintiff to determine the nature, direction, and scope of ongoing criminal investigations. In certain cases, because it is the name of the individual under investigation, disclosure of the Investigation Name may alert that individual for the first time that they are under investigation. Public disclosure of that information could result in the destruction or dissipation of additional assets that might also be subject to seizure at a later date. Disclosure of the type of assets seized or subject to seizure would reveal the limits of the investigation, and strategies and theories being utilized by the government in the course of its investigations.

34.   In other cases, the type of an investigation plus the disclosure of the field office (the office responsible for conducting that investigation (the "Organization" column)) may itself be sufficient to identify the target of the investigation (*e.g.*, when an investigation pertains to national security or terrorism-related activities), and alert that individual to the existence and

nature of the investigation

35. Disclosure of information concerning the Storage Location, which identifies the physical location of the seized asset, and the Asset Description, may reveal the types (e.g., cash, fine jewelry) of assets that are seized by the Service and where they are being stored, and is redacted to ensure that they remain secure from unwarranted interference with ongoing law enforcement proceedings (such as theft, or attempts to reclaim possession) and to avoid disclosing otherwise unknown law enforcement locations and/or the identities of contractors who work with the Service to store and secure assets in CI custody during the pendency of ongoing law enforcement proceedings.

## **Exemptions 6 and 7(C)**

36. Exemption 6 permits an agency to withhold all information about individuals in "personnel and medical and similar files" whether the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy

37. Exemption 7(C) exempts from disclosure information related to third parties compiled for law enforcement purposes that, if released, could reasonably be expected to constitute an unwarranted invasion of the personal privacy of individuals. For example, the Asset Description includes information such as the street address of real property, the amount of cash or currency, the VIN of a vehicle, or the routing and account numbers of bank accounts.

38. In addition to any other exemptions that might otherwise apply, the Service has asserted FOIA Exemptions 6 and 7(C) for all fields containing personal identifying information that alone, or in conjunction with other information from the report, could potentially reveal the identity of individuals that are or were the subject of criminal investigations., which would constitute an unwarranted invasion of personal privacy.

39. Exemptions 6 and 7(C) are claimed by the Service for the following columns for every asset on the report, whether designated as "open" or "closed": Organization, Lead Agent, AFTRAK Number, Program Area, Investigation Name, Investigation Number, Asset Description, Storage Location, and SEACATS Number.

40. The information redacted from most of columns pursuant to Exemption 6 and 7(C) (all but the Lead Agent, Program Area, and SEACATS Number) is required to be included in the public notice of seizure that the Service must publish for every asset it seizes. An example of such notice can be found in IRM Exhibit 9.7.2-3 (July 15, 2002). For example:

- Where an asset is "closed" (e.g., forfeited or returned) but the individual whose asset was seized is still associated with – or the target of – an open investigation, the disclosure of information contained in a notice of seizure could identify that individual's association with an ongoing investigation.

- Similarly, a member of the public could search the public record using one or a combination of fields that are included on the notices of seizure to identify the identity of individuals that were the target of or associated with a criminal investigation, whether or not that investigation resulted in formal charges and conviction.

41. The information contained in a notice of seizure could therefore be used to connect an individual to a particular criminal investigation, and reveal them to be either a current subject of that investigation, or a former subject of an investigation.

42. The Service has redacted the Program Area and SEACATS columns pursuant to Exemptions 6 and 7(C) based on the taint or stigma associated with criminal investigations that could accrue to the target of the investigation if that information were made known. For

example, information in the Program Area column could reveal that the individual was being investigated for some type of fraud, general or corporate, or for terrorism. Because the SEACATS Number is assigned by the U.S. Customs and Border Patrol, not the Service, and a search of the public record based on that number could also enable someone to identify the individual that is or was a target of the criminal investigation or other law enforcement action by that agency, it was also redacted to protect the privacy of targets of criminal investigation. The SEACATS number is also redacted under Exemption 7(A).

43. The Lead Agent column is redacted pursuant to Exemptions 6 and 7(C) because the names of all Special Agents (the 1811 position series) are designated as sensitive positions exempt from disclosure to avoid any unwarranted invasion of personal privacy, including the threat of harassment or abuse of the agent or their families, and to protect the integrity of any on-going criminal investigation. See IRM 11.3.13.9.8 and 11.3.13.9.10.1 (Apr. 19, 2017).

44. I am not aware of any reason why the public interest in learning more about CI's seizure and forfeiture actions would outweigh the privacy rights of individuals being investigated or the agents involved in those investigations.

### Exemption 7(F)

45. FOIA Exemption 7(F) exempts from disclosure information that, if disclosed, could endanger the life or physical safety of any individual.

46. In addition to any other redactions that may also apply, the Service has redacted the Lead Agent, AFTRAK Number, Investigation Name, Asset Description, and Storage Location columns for all assets on the report pursuant to Exemption 7(F).

47. The Lead Agent column is redacted to protect the CI Special Agents and their families from threat, harassment, or physical attack that could result if this information is made

known.

48. The AFTRAK Number column is redacted because a search of the public record using that information could enable someone to compromise the physical safety and well-being of the all individuals associated with the investigation that resulted in the seizure of the asset, including the Special Agent, the investigation target, and/or any storage contractor(s).

49. The Investigation Name, which is usually the name of target of the investigation, and Asset Description, which may include target's street address, are redacted to avoid endangering the physical safety and well-being of the investigation target and/or their property.

50. Finally, the Storage Location, which identifies the physical location of the seized asset, is redacted to protect the physical safety of any individuals employed at, or living in proximity to, the storage location, as well as the physical security of the storage location and all seized property stored therein from theft, vandalism, or destruction.

I declare under penalty of perjury that to the best of my knowledge and belief, the foregoing is true and correct.

Executed on July 10, 2017 in Washington, D.C.

*[signature]*

Dean E. Martin
Senior Analyst
Criminal Investigation
Operations Policy & Support
Warrants & Forfeiture