# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **INSTITUTE FOR JUSTICE**, <br><br> Plaintiff, <br><br> v. <br><br> **INTERNAL REVENUE SERVICE**, <br><br> Defendant. | Case No. 1:16-cv-02406-TNM |

## MEMORANDUM OPINION

The Institute for Justice is a nonprofit interested in civil forfeiture issues, and the Internal Revenue Service conducts civil seizures and forfeitures as part of its law enforcement role. At issue here is the Institute's request under the Freedom of Information Act for a comprehensive "database dump" from the IRS Asset Forfeiture Tracking and Retrieval System (AFTRAK), which monitors seized assets. The IRS contends that AFTRAK is not a database containing "records" and thus subject to FOIA but is only an electronic system that generates reports based on "records" in subsidiary databases. Because standard reports may still qualify as "records" under FOIA, the IRS generated the most comprehensive report that AFTRAK can create, producing an almost completely redacted version to the Institute. The Institute, understandably, was not satisfied. For the reasons below, the Court holds that the IRS has produced the legally relevant report, but with a few improper redactions under FOIA. Each party's Motion for Summary Judgment will therefore be granted in part and denied in part.

### I. Background

The Institute for Justice (the Institute, or IJ) describes itself as "a non-profit organization

1

. . . dedicated to promoting and defending civil liberties." Compl. ¶ 2, ECF No. 1. The Institute "has dedicated considerable resources to studying and informing the public about problems associated with civil forfeiture." *Id.* ¶ 3. In March 2015, the Institute asked the IRS to provide "all records contained in the Internal Revenue Service-Criminal [I]nvestigations Division's Asset Forfeiture Tracking and Retrieval (AFTRAK) database from 2000 to the present." Compl. Ex. A (FOIA Request), ECF No. 1-5. The request asked for the records "in an electronic format such as a database 'dump' or comma-separated value files," and also sought "the complete database schema and/or database model describing the tables," and "any database reports, stored procedures, or queries used to aggregate information, such as an annual report." *Id.* The IRS at first demanded a fee of $753,760 before it would process the request, and it denied the Institute's request for a fee waiver. *Id.* ¶¶ 20, 24-25.

When the Institute sued in December 2016, the IRS jettisoned its fee requirement. IRS Mem. In Support of Mot. Summ. J. (IRS Mot. Summ. J.) 1. Instead, it generated AFTRAK's Open and Closed Report (Report), "which contains comprehensive data about every asset seized by [the IRS Criminal Investigation Division] within a specified time period." Decl. of Dean E. Martin (Martin Decl.) ¶ 10, IRS Mot. Summ. J., ECF No. 14-3. The Report is "the most utilized and complete standard report available from the AFTRAK system," *id.*, and the IRS concluded that "release of any of the other standard reports available from AFTRAK, alone or in combination, would not result in the production of any additional or different information about any of the [relevant] assets." *Id.* ¶ 11. Sr. Analyst Dean Martin ran the Report for the relevant timeframe—January 1, 2000, to March 3, 2015, the date of the FOIA request—and redacted the portions of the Report that he believed to be subject to FOIA exemptions. *Id.* ¶¶ 12, 21.

2

The Report is "a 78-page table, with each row . . . corresponding to an individual AFTRAK asset seizure and each column corresponding to a certain type of information." IJ Mem. In Support of Mot. Summ. J. (IJ Mot. Summ. J.) 6 (citations omitted). The final product, according to the Institute, was "a PDF file that is approximately 94-99 percent redacted," mostly on a "row-by-row or column-by-column basis." *Id*.

After the IRS produced the redacted Report, the parties filed cross-motions for summary judgment. The Court then issued an Order holding that the IRS had inadequately invoked FOIA exemptions for two redaction categories: certain fields redacted because of alleged grand jury connections, and four columns redacted because of privacy concerns. Order of June 5, 2018 1-2, ECF No. 32.[1] The Order required the IRS to either produce the relevant information or submit a supplemental declaration explaining in greater detail why production was not required. *Id*. The IRS then produced almost all the relevant information along with a supplemental affidavit, Notice of Compliance, ECF No. 35; Declaration of Jacqueline K. Queener (Queener Decl.), ECF No. 34, and the parties filed briefs disputing whether the IRS had complied with the Order in full. The case is now ripe for decision.

**II. Legal Standards**

FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 365-66 (D.C. Cir. 2008); *see also* 5 U.S.C. § 552(a)(3)(A) (records sought must be "reasonably describe[d]"). To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v.*

---

[1] The Court incorporates that Order by reference here in full.

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Thus, a FOIA defendant is entitled to summary judgment if it proves "beyond material doubt [] that it has conducted a search reasonably calculated to uncover all relevant documents," *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (citation omitted), and that there is no genuine dispute over whether "each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (citation omitted).

Agency declarations receive "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (citation omitted). Searching for records requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and is "hardly an area in which the courts should attempt to micro-manage the executive branch." *Schrecker v. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003). To establish the reasonableness of its search, an agency can submit a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "[S]ummary judgment . . . is warranted if the affidavits describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

III. Analysis

**A. Creating the Open and Closed Report Satisfied FOIA's Search Requirements**

"The Freedom of Information Act deals with 'agency records,' not information in the abstract." *Forsham v. Harris*, 445 U.S. 169, 185 (1980); 5 U.S.C. § 552(a)(3)(A) ("each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person."). Agency records may even include "the contents of entire databases" and "all non-exempt data points" therein. *Nat'l Sec. Counselors v. CIA* (*NSC I*), 898 F. Supp. 2d 233, 272 (D.D.C. 2012). Knowing this, the Institute asked the IRS for "all *records* contained in the [AFTRAK] database," and the information it needed to understand those records. FOIA Request, ECF No. 1-5 (emphasis added).

But the IRS contends that "AFTRAK does not 'contain' records because it is not a database." IRS Mot. Summ. J. 7. Instead, AFTRAK is "a web-based application system specifically designed to track assets seized for forfeiture, evidence, and abandonment," that "compiles information from multiple databases." Martin Decl. ¶¶ 6, 8. In essence, the IRS argues that the Institute is asking for records that do not exist (records "in" AFTRAK itself), and for a technological impossibility (a database dump from a non-database). IRS Mot. Summ. J. 6-7.

The IRS admits that AFTRAK could compile information from other databases, creating records of interest to IJ. *Id*. at 7. But it argues that doing so exceeds the agency's duties under FOIA. Though FOIA is a broad statute, it "imposes no duty on the agency to create records." *Forsham*, 445 U.S. at 186; *see Nat'l Sec. Counselors v. C.I.A.* (*NSC II*), 960 F. Supp. 2d 101, 160 n.28 (D.D.C. 2013) (holding that "a unique permutation of smaller, individual pieces of

5

information . . . constitutes a distinct record" for FOIA purposes). Because "[a] requester is entitled only to records that an agency has in fact chosen to create and retain," *Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 321 (D.C. Cir. 1982), the IRS reasoned that standard reports like the Open and Closed Report might constitute existing records under FOIA. IRS Mot. Summ. J. 8. It decided to produce the most comprehensive standard report available from AFTRAK, to satisfy any possible obligation under FOIA. *Id*.

Not so fast, the Institute says. The Government must conduct a "search reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citation omitted). The search here was inadequate, the Institute argues, because its reasoning about the relevant records is incorrect. The Institute cites several documents produced by the IRS that describe AFTRAK as a "database" or its functional equivalent, and it points out that Mr. Martin's affidavit never explicitly denies that AFTRAK is a database. Mem. In Support of Pl.'s Opp. and Cross-Mot. Summ. J. (IJ Cross-Mot. Summ. J.) 8-10. Even if AFTRAK is not technically a database, the IRS should have construed the request liberally, the Institute contends, and searched for the records that the Institute clearly desired. *Id*. 11-12. According to the Institute, the IRS admits that it conducted no search at all, let alone a reasonable one, and provided the redacted Report only for its own convenience. *Id*. at 12-13.

These arguments fall short. The Institute asked for "all records contained in the [AFTRAK] database," ideally in the form of a database dump or comma-separated value (CSV) files. FOIA Request, ECF No. 1-5. Interpreting that request "liberally" as the IRS must, *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), the

6

Institute asked for all the data that AFTRAK had to offer.[2] That is exactly what the IRS looked for. The IRS produced a Report that—in unredacted form—contains every data point on every relevant seized asset. The Institute argues that even if AFTRAK is not a database, the IRS should have searched for all records accessible through the AFTRAK system. *Id*. at 11. But that is essentially what happened. The Institute fails to identify any record, or even a single data point, that the IRS improperly excluded from its search when it created the Report.[3]

The real problem for the Institute is the Report's format, not the data itself. *Id*. But the IRS has abundantly established that other formats proved unobtainable. Mr. Martin "and others at the [IRS] spent considerable time and effort attempting to determine whether it would be possible to produce a properly redacted report timely in one of the formats the plaintiff requested." Martin Decl. ¶¶ 13-14. The IRS learned that the Institute would prefer "CSV . . . Excel, Stata, or SPSS format instead of in Adobe," *id*. ¶ 13, but ultimately concluded that those options were unavailable:

> Based on the software tools owned and regularly used in the course of our day to day operations, of the four formats requested by the plaintiff, the only format that we had software that we could possibly use to produce the report was Excel. However, despite our best efforts, we concluded that due to the limitations inherent in Excel, it would not be possible to permanently redact the information on the report that was exempt from disclosure under the FOIA and readily reproduce the redacted report in Excel format.
>
> It was further determined that in order to produce the report with redactions in any of the other formats requested by the plaintiff would require either acquisition of software not currently owned by the [IRS] or development of a new computing program. . . .

---

[2] The Institute itself interprets the request the same way. IJ Cross-Mot. 8 (contending that "records" include data points in electronic databases).
[3] The Institute names "identifying numbers for each seizure" as an example of a record for which the IRS has not searched, IJ Cross-Mot. Summ. J. 13, but those numbers form at least two of the columns in the Report: AFTRAK Number and SEACATS Number.

> Accordingly, we concluded that the report could not be made "readily reproducible," with all information protected from disclosure properly redacted, in any of the formats requested by the plaintiff with reasonable efforts.
>
> I therefore resumed work on the report in Adobe on a full-time basis
> . . . .

*Id*. ¶¶ 15-18. In other words, Adobe was the only technologically-feasible route available. Though the Institute characterizes this as "convenient," the work of redactions *still* required a full six weeks of work from Mr. Martin, a Senior Analyst whose "primary role is to plan and coordinate criminal investigative activities." *Id*. ¶¶ 3, 18, 20 ("all of my other assignments were placed 'on hold' pending the completion of this project."). The Court doubts he found this convenient.

Because the IRS located every record that the Institute requested, there is no need to resolve the technical question of whether AFTRAK is or is not a database. But if pressed, the Court would be inclined to defer to the IRS's answer, not IJ's guess or cherry-picked quotes plucked from random government documents. The IRS generated a comprehensive report that revealed every possible data point on seized assets in the AFTRAK system during the relevant timeframe, thereby conducting a "search reasonably calculated to uncover all relevant [records]." *See Weisberg*, 745 F.2d at 1485. This satisfies FOIA's search requirements.

### B. The IRS Largely Applied FOIA's Exemptions Correctly

The IRS withheld the great majority of the Report under four broad categories, but only two of those categories remain contested. The Court puts aside the past redaction of grand jury-related information[4] or the current redaction of Special Agents' names. IJ Cross-Motion 19 ("IJ

---

[4] The IRS originally invoked FOIA Exemption 3 with Federal Rule of Criminal Procedure 6(e) to withhold "[a]ll fields on the report for an asset associated with a grand jury investigation as of March 28, 2017." Martin Decl. ¶¶ 22, 27-29. But in obedience to the Court's Order of June 5,

8

does not dispute that the IRS can redact the "Lead Agent" . . . fields"). But the remaining two categories require additional consideration.

### 1. The IRS Properly Invoked Exemption 7(A) For Open Investigations

FOIA Exemption 7(a) shields "records or information compiled for law enforcement purposes, but only to the extent that the production . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). "Categorical withholding is often appropriate under Exemption 7(A)." *Citizens for Responsibility & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1098 (D.C. Cir. 2014). To do so, "[an agency] has a three-fold task. First, it must define its categories functionally. Second, it must conduct a document-by-document review in order to assign documents to the proper category. Finally, it must explain to the court how the release of each category would interfere with enforcement proceedings." *Id*. (quoting *Bevis v. U.S. Dep't of State*, 801 F.2d 1386, 1389–90 (D.C. Cir. 1986) (brackets in original)). "Functional" organization means that the category "allows the court to trace a rational link between the nature of the document and the alleged likely interference." *Bevis*, 801 F.2d at 1389. "As to the third task," the agency "must . . . demonstrate *how* disclosure would interfere with enforcement proceedings." *Citizens for Responsibility & Ethics in Washington*, 746 F.3d at 1098 (emphasis in original) (cleaned up).

The IRS invoked this exemption to redact a single category: all information related to assets seized in open investigations. Martin Decl. ¶ 31. Since the Report is a giant table, and each line on the report represents a single seizure, this results in the line for each "open" asset

---

2018, the IRS consulted with the Executive Office of United States Attorneys, and then abandoned that position. Consent Motion for Extension of Time to Comply with June 5, 2018 Order ¶¶ 4-5, ECF No. 33. Now those fields of the Report have been disclosed, if the IRS relied only on the authority of Exemption 3 and Rule 6(e). Notice of Compliance 1.

being redacted in full. IRS Mot. Summ. J. 10-11. The IRS explains that disclosing information about open investigations could compromise them in various ways, such as by alerting targets of the investigation, providing information about the scope and theory of the investigation, and compromising the secrecy that can be essential to effectiveness and safety. *Id*. ¶¶ 32-35.

In response, the Institute argues that the IRS has failed to discuss specifically 16 of the 23 columns and that aside from six listed columns, "none of the information in the other columns . . . if disclosed, would plausibly make the likelihood of interference readily apparent." IJ Cross-Mot. 26 (citation and internal quotation marks omitted). Since seizures are unlikely to be a secret to those whose property is seized, and the Department of Justice has released what the Institute considers to be comparable records, the Institute infers that release of these columns (presumably the 17 non-listed columns) would not plausibly interfere with open investigations. *Id*. at 26-27. Even if the IRS has adequately described why *some* columns should be redacted, the IRS argues that the IRS should have segregated and released some unspecified columns.

The problem with these arguments is two-fold.

First, the IRS has satisfied its obligation to withhold information in a categorical manner for assets seized in open investigations. All "open" assets is a functional category: there is a rational link between seizures in open investigations and potential interference. This satisfies both the functionality and "proper category" requirements from *Bevis*, since there is only one category here. As to the third task, the IRS has described with the required "reasonably specific detail," *Military Audit Project*, 656 F.2d at 738, why revealing seized asset information could jeopardize open investigations. Martin Decl. ¶¶ 32-35. Granted, individuals will likely know when their own property has been seized. But further specific information might give tips about the larger investigation that "could result in the destruction or dissipation of additional assets that

might also be subject to seizure at a later date." *Id*. ¶ 33. For example, the description of the assets seized in an ongoing investigation could reveal its "nature, direction, and scope," also helping investigation targets. *Id*. That the DOJ might have reached different conclusions in another FOIA case—not endorsed in any judicial opinion—does not control here.

Second, the Institute fails to give any specific examples of columns that the IRS allegedly should have segregated and released. Even if the Court were prepared to question Mr. Martin's judgment on some columns that he did not specifically mention, the Institute has provided no clues about which columns the Court should consider. For example, the "Data Source" column is not specifically mentioned by Mr. Martin, and it falls in the general category of "other columns" that the Institute thinks the IRS could release. IJ Cross-Mot. 26. Perhaps that column could be segregated—or perhaps it might reveal the sub-agency investigating the case. But is this the column that the Institute cares about? Or is "Seizure Type" more important? With no specific requests, the Institute's segregation request is impractical and inadequate.

All in all, the IRS has established that releasing data about assets seized in open investigations "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Summary judgment is therefore warranted.

### 2. The IRS Properly Invoked Exemptions 6 and 7(C)

The dispute in this area has narrowed significantly. The IRS originally invoked FOIA Exemptions 6 and 7(C)—both privacy-related exemptions—to withhold nine columns on the Open/Closed Report. Martin Decl. ¶ 39. The Institute "does not dispute" four of those columns: Lead Agent, Investigation Name, Storage Location, *see* IJ Cross-Mot. 19, and Investigation

11

Number.[5]  In compliance with the Court's Order of June 5, 2018, the IRS released three more columns containing information already public—the Organization, AFTRAK Number, and Asset Description columns—if they were withheld only under these two exemptions.  Notice of Compliance 1.  Of the three partially-released columns, the Institute still objects to partial redactions in the Asset Description column.  IJ's Response to Defendant's Supplemental Declaration and Notice of Compliance (IJ's Response) 1-3, ECF No. 36.  And the parties still dispute the remaining two columns: Program Area and SEACATS Number.  To recap, only three of the nine columns redacted under these Exemptions remain contested: Asset Description, Program Area, and SEACATS Number.

      The IRS is entitled to summary judgment here as well.

      Exemptions 6 and 7(C) are closely related.  Exemption 7(C) protects "records or information compiled for law enforcement purposes, but only to the extent that the production . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7).  Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  *Id.* § 552(b)(6).  Both exemptions "require agencies and reviewing courts to 'balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information.'"  *Bartko v. DOJ*, 79 F. Supp. 3d 167, 172 (D.D.C. 2015) (quoting *Beck v. DOJ*, 997 F.2d 1489, 1491 (D.C. Cir. 1993)).  But "the balance tilts more strongly toward nondisclosure in the context of Exemption 7(C)."  *Id*.  Under Exemption 7(C), if the FOIA request implicates substantial privacy interests, then those interests can be outweighed only by a

---

[5]  After the Court's June Order, the IRS continued to withhold the Investigation Number column, explaining that the column had been inadvertently described as public information, *id*. at 2, and the Institute "no longer objects" to redaction of this column.  ECF No. 36 at 2 n.1.

12

"significant" public interest in the information that disclosure will "likely . . . advance." *Roth v. DOJ*, 642 F.3d 1161, 1174–75 (D.C. Cir. 2011). Because Exemption 7(C) is an easier hurdle, courts need not address Exemption 6 if 7(C) applies. *See Schoenman v. FBI*, 576 F. Supp. 2d 3, 12 (D.D.C. 2008).

As to the Program Area and SEACATS Number columns, the IRS easily establishes the applicability of Exemption 7(C). Mr. Martin explains that "information in the Program Area column could reveal that the individual was being investigated for some type of fraud, general or corporate, or for terrorism." Martin Decl. ¶ 42. "Because the SEACATS Number is assigned by the U.S. Customs and Border Patrol, not the [IRS] . . . a search of the public record based on that number could also enable someone to identify the individual that is or was a target of the criminal investigation or other law enforcement action by that agency." *Id*. Withholding both columns "protect[s] the privacy of targets of criminal investigation." *Id*.

The D.C. Circuit has "long recognized . . . that the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Schrecker v. DOJ*, 349 F.3d 657, 666 (D.C. Cir. 2003). "[T]he targets of law-enforcement investigations . . . have a substantial interest in ensuring that their relationship to the investigations remains secret." *Roth*, 642 F.3d at 1174.

Because public notices of asset seizures give the name of the person from whom the asset was seized,[6] someone with the Program Area or SEACATS Number could link that information to named asset owners, by cross-referencing that information—along with linked public

---

[6] The example public notice that Mr. Martin cites reads: "On **(date)** the **(full description of seized property)** was seized for administrative forfeiture from **(name)** at **(location of seizure)** for violations of **(statute)**." Internal Revenue Manual Part 9, Exhibit 9.7.2-3, Notice of Seizure, https://www.irs.gov/irm/part9/irm_09-007-002#idm139661318254736 (emphasis in original); Martin Decl. ¶ 40 (citing IRM Exhibit 9.7.2-3 (July 15, 2002)).

13

information such as the Organization, AFTRAK Number, or Asset Description—against the information in the public notice. The reverse could also happen: armed with a public seizure notice, someone could cross-reference that information against the Report to learn the Program Area or SEACATS Number. See IRS Mot. Summ. J. 17.

The Institute says that this is "highly unlikely" and that the IRS has not adequately explained how it could happen. IJ Cross-Mot. 29-30. This was certainly true for the *already public* columns that the Court ordered the IRS to produce. After all, "cross-referencing a FOIA production against public data can only reveal non-public information (and thus potentially invade privacy) to the extent that the FOIA production *includes non-public information*." Order of June 5, 2018, at 2 (emphasis in original). But the Program Area and SEACATS Number are not yet public, and making them available for cross-referencing against public seizure notices could endanger the substantial privacy interests of investigation targets. The Court credits the Institute's representation that it is vindicating the public interest in learning about law enforcement policy and civil forfeitures. *See* Compl. ¶ 3. But that generalized interest is outweighed by the specific privacy interest—specifically linked to the Program Area and SEACATS Number columns—that asset owners have in "ensuring that their relationship to the investigations remains secret." *See Roth*, 642 F.3d at 1174.

As to the final contested column—Asset Description—the Institute has waived its remaining objections. The Institute only disputed the IRS redactions in this column based on Exemptions 6 and 7(C), IRS Cross-Mot. i, 28-30, and the IRS has turned over any the fields redacted only on that basis. Notice of Compliance 1. In responding, the Institute complains that the IRS redacted "the vast majority of the 'Asset Description' column" under those exemptions *and* Exemption 7(F). IJ's Response 1-2. It argues that IRS is not being specific enough about

which portions of the column justify 7(F) protection. *Id*. But "[a]n argument that is not raised before the reply is untimely and will not be allowed." *Lester E. Cox Med. Centers v. Sebelius*, 691 F. Supp. 2d 162, 168 (D.D.C. 2010).

The Institute did not raise this argument in its Cross-Motion for Summary Judgment, or even in its combined Reply brief. In fact, the Institute's only prior mention of Exemption 7(F) in previous briefs was a concession. IJ Reply 8 n.6, ECF No. 26 ("IJ has conceded that the IRS may withhold the Lead Agent column pursuant to Exemption 7(F)). In most circumstances, "issues not raised until the reply brief are waived." *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 123 (D.C. Cir. 2010). Since the Institute has never sought summary judgment on this issue, and first raised the argument in a filing *after* its reply, the Court considers it waived.

Because the IRS has properly invoked Exemption 7(C), no genuine issue of material fact remains, and the IRS is entitled to summary judgment.[7]

---

[7] In a footnote, the IRS suggests that "[a]t a minimum, this Court should conduct an *in camera* review of the Open/Closed Report to determine whether all of the information that the IRS redacted is truly exempt." IRS Cross-Mot. 19 n.5. But this amounts to vague speculation that the IRS must have erred. "[D]istrict courts have substantial discretion" in deciding whether to review documents *in camera*, *Ctr. for Auto Safety*, 731 F.2d at 21, and "[t]he ultimate criterion is simply . . . [w]hether the district judge believes that *in camera* inspection is needed in order to make a responsible *de novo* determination on the claims of exemption." *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978); 5 U.S.C. § 552(a)(4)(B) (a court "may examine the contents of . . . agency records in camera"). "[T]he mere possibility of error does not warrant in camera review." *DeFraia v. Cent. Intelligence Agency*, 311 F. Supp. 3d 42, 50 (D.D.C. 2018).

## IV. Conclusion

For these reasons, the IRS' Motion for Summary Judgment will be granted as to most of the Report and denied as to the fields already produced in compliance with the Court's Order of June 5, 2018. The Institute's Cross-Motion for Summary Judgment will be granted as to those fields and denied as to the remainder. A separate Order will issue.

**SO ORDERED**.

Dated: September 28, 2018 TREVOR N. MCFADDEN, U.S.D.J.