IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INSTITUTE FOR JUSTICE, | ) | |
| | ) | Case No. 1:16-cv-02406-TNM-GMH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

**JOINT STATUS REPORT**

Pursuant to this Court's January 7, 2020 Minute Order, the parties have met and conferred by telephone on January 24, 2020 and January 28, 2020.  The parties submit this joint status report and their respective recommendations for further proceedings in light of the United States Court of Appeals' opinion in Case No. 18-5316.

**Internal Revenue Service's Position**

The Court of Appeals' opinion reversing the judgment in this case held that whether AFTRAK is a database and whether the Open/Closed Asset Report contained all information in AFTRAK were material issues of fact.  In light of the issues the Court of Appeals raised, the Internal Revenue Service ("Service") proposes to search for, review, and release (subject to FOIA exemptions) an individual transcript for each of the assets in AFTRAK during the relevant time period of Plaintiff's FOIA request, which will contain the information for that asset in AFTRAK.

Counsel for the parties initially conferred on January 24 and January 28, 2020.  As of February 4, 2020, Institute for Justice had not consented to the Service's individual transcript proposal.  Accordingly, the Service proposes that the FOIA summary judgment issues should be

bifurcated: (1) the parties should brief at the outset whether the Service meets its obligation under the FOIA by releasing the transcripts, or whether it is required to provide a "database dump" to Plaintiff; and (2) after that issue is decided, and the Service completes its release (or database dump), the parties should brief the assertion of FOIA exemptions.

At the outset, the Service represented in a number of places in its briefing that AFTRAK is not a database. Upon further investigation, those representations were incorrect. AFTRAK is a web-based application the data set of which is maintained in a database.[1]

The fact that AFTRAK is a database, however, does not alter the Service's fundamental legal position in this case. The Service conceded long ago in this case that it would provide the information in AFTRAK to Institute for Justice: it released a 30,000 row report, the Open/Closed Asset Report. The Service simply disagreed (and continues to disagree) that the FOIA requires it to copy and "dump" the entire database. The Service maintains that a "dump" requires the *creation* of a new record, which is not required under the FOIA.

The Service has therefore researched how AFTRAK can be utilized to could provide the data to Institute for Justice in a format other than a "database dump." The Service has determined that it can provide the data by printing a record called a Seizure/Asset Transcript from AFTRAK for each individual asset, and it provided a blank copy of such a report to Plaintiff on February 4, 2020. The Service believes that the release of the Seizure/Asset Transcripts, subject to applicable FOIA exemptions from disclosure, will satisfy the Service's obligation to conduct a reasonable search.

---

[1] In light of the Court of Appeals' opinion, the Service will submit new declaration(s) and evidence in support of its motion. The Service will correct those representations and further explain the corrections in its submissions.

The Service posits that the release of the Seizure/Asset Transcripts will satisfy its search obligations under the FOIA. It understands that Plaintiff will likely disagree. Plaintiff seems inclined to insist on a database dump instead and intends to request discovery, as it did previously.[2] The Service believes that the question of what FOIA requires regarding the form of the disclosure – a database "dump," the release of the transcripts, or something else – is therefore ripe for determination by the Court, and should be briefed in the short term before records are processed and releases begin.

Bifurcation of these issues is the most efficient path forward, and will lessen (if not totally eliminate) the possibility that the Service has to release and redact the same information in very different formats, three times in this case, over a three-year period. The Service therefore proposes to file an opening brief on the reasonableness of the search on or before **March 6, 2020.**

**Institute for Justice's Position**

As Institute for Justice ("IJ") has chronicled in detail elsewhere, the Service's position throughout this litigation has constantly shifted and evolved. *See, e.g.*, Dkt. 28 at 1 (explaining that the IRS originally demanded $753,760 for AFTRAK records, then changed positions after this suit was filed to claim that AFTRAK is not a database and therefore contains no records, then shifted positions yet again on summary judgment to claim that the almost entirely redacted Open/Closed Report is the only record subject to FOIA); Dkt. 15-1 at 1-3 (similar). Now the D.C. Circuit's decision has forced the Service to shift again and admit two material facts. First, contrary to what the Service represented to this Court and the D.C. Circuit, AFTRAK is a database—as IJ

---

[2] Plaintiff's request later in this report for an order granting discovery is procedurally improper and premature. Plaintiff is required to move for such relief in accordance with this Court's Standing Order, and the IRS is entitled to an opportunity to oppose. *See* ECF. No. 25, Standing Order (establishing procedures for resolving discovery disputes).

has contended all along.  *See, e.g.*, Dkt. 14-1 at 7 (the Service arguing that AFTRAK "is not a database"); Dkt. 1786909, No. 18-5316 (D.C. Circuit) at 38 (the Service arguing that its documents "that refer in passing to AFTRAK as a 'database' do not purport to provide a technical description or analysis of AFTRAK," "are not binding," and "cannot change AFTRAK's fundamental character so as to transform it into the equivalent of an electronic filing cabinet").

Second, also contrary to what the Service consistently represented to both courts, the Open/Closed Report does not contain all of the data in AFTRAK.  *See, e.g.*, Dkt. 26 at 5-6 ("the Open and Closed Asset Report … 'includes all information accessible in the AFTRAK system'" (quoting Martin Dec., ¶ 10, n. 1)); *id.* at 7 (same); Dkt. 1786909, No. 18-5316 (D.C. Cir.) at 41-45 (arguing that "the open/closed report revealed all relevant data points in the AFTRAK system during the relevant timeframe" and "disclosure of any other standard report would not have disclosed additional data points" (internal quotation marks omitted)).  Indeed, a sample Transcript recently provided by the Service to IJ demonstrates that AFTRAK contains significant amounts of data that are not in the Open/Closed Report.

IJ agrees with the Service that proceedings should be bifurcated into two broad phases:  (1) establishing what the Service must produce and then (2) establishing what the Service may permissibly withhold or redact from that production. But IJ disagrees with how those phases should be implemented.

 With respect to the first phase, the Service now claims that release of the Transcripts will satisfy its FOIA obligations.  Notably, even in light of the D.C. Circuit's opinion, the Service *still does not claim that the Transcripts contain **all** of the data in AFTRAK*.  And even if the Service did make such a claim, IJ should be entitled to test the veracity of it given that the facts now represented by the Service are the opposite of what it previously represented.  The D.C. Circuit's

opinion "le[ft] open to the district court on remand to consider the extent to which discovery may be appropriate in light of [its] opinion."  Opinion, Dkt. 1813708, No. 18-5316 (D.C. Cir.) at 12. In light of the Service's new revelations, there is no doubt that such discovery is now appropriate. *See Jett v. FBI*, 241 F. Supp. 3d 1, 6 (D.D.C. 2017) (stating discovery should be granted when there are "serious inconsistencies in the agency's representations of the scope and completeness of its searches"); *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 185 F. Supp. 3d 26, 27 (D.D.C. 2016) (granting discovery in light of the agency's inconsistent representations about the scope and completeness of its search).  Discovery is necessary to determine once and for all what records are in AFTRAK so that this case can move toward resolution without further waste of judicial and party resources.

Similarly, the Service claims that it is not obligated to produce AFTRAK's data in the form of a database dump, such as an Excel spreadsheet or comma separated value file (CSV), because that would involve creation of a new record.  But that argument fails in light of the Service's new concession that AFTRAK is a database.  The data points in AFTRAK's database are indisputably records subject to FOIA.  5 U.S.C. § 552(f)(2) (defining "record" as "any information that would be an agency record subject to the requirements of [the FOIA] when maintained by an agency in any format, including an electronic format").  Indeed, the D.C. Circuit held in this very case that "[i]n the context of a request for a database, FOIA requires agencies to disclose all non-exempt data points, subject, as always, to limits aimed at protecting agencies from undue burdens." Opinion at 4 (internal quotation marks and citation omitted).  And agencies are required to "provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."  5 U.S.C. § 552(a)(3)(B).  There is no reason IJ should have to accept the data in a format that is difficult to read and use, given that all modern databases have

the capability of exporting data in a form like that requested by IJ.  IJ should be entitled to discovery on any claim the Service makes that the records are not readily producible in that format.

Accordingly, IJ respectfully requests that it be permitted to briefly depose the Service under Federal Rule of Civil Procedure 30(b)(6) concerning the data contained in AFTRAK and the formats in which that data can be readily produced to IJ.  It would be an inefficient use of judicial and party resources to further prolong this litigation by having full summary judgment briefing on what the IRS must produce, only to once again learn later that the facts are not as the IRS has claimed.

Accordingly, for phase 1, IJ respectfully proposes that the Court require the Service to produce its anticipated declaration concerning AFTRAK's technical characteristics and contents by **March 2, 2020**, and the Service's representative would sit for a half-day Rule 30(b)(6) deposition by **March 16, 2020.**  The Service could then move for summary judgment on the adequacy of its search for records and the appropriate format for disclosure of those records by **April 6, 2020**, with the IJ's brief in response and any cross-motion for summary judgment on these issues due by **May 4, 2020.**  Further responsive briefs could then follow at two-week intervals thereafter.

//

//

DATE: February 6, 2020

*s/ Ryan O. McMonagle*
RYAN O. McMONAGLE
JOYCELYN S. PEYTON
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, D.C.  20044
Tel:  202-514-6576
Fax:  202-514-6866
Joycelyn.S.Peyton@usdoj.gov
Ryan.McMonagle@usdoj.gov
*Counsel for Defendant*


*s/ Andrew D. Prins*
ANDREW D. PRINS
NICHOLAS L. SCHLOSSMAN
Latham & Watkins LLP
555 Eleventh Street, N.W.
Suite 1000
Washington, D.C. 20004
Tel: 202-637-2200
Andrew.Prins@lw.com
*Counsel for Plaintiff*